UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. GILL,<br>    Petitioner,<br>v.<br>MACDONALD,<br>    Respondent. | Case No. 16-cv-01177-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Steven Gill is understandably upset that his lawyer's aggressive plea bargaining may have cost him a lesser sentence. Viewed with hindsight and with Gill's understanding of the facts, his lawyer made a mistake for which Gill is paying. But viewed through the challenging lens of AEDPA, I cannot conclude that Gill would not have pleaded guilty and would have insisted on going to trial but for his lawyer's advice. Gill's petition for federal habeas relief from his state convictions on the ground that defense counsel rendered ineffective assistance during plea negotiations is DENIED.

## BACKGROUND

In 2012, in the Contra Costa Superior Court, Gill pleaded guilty to robbery, burglary, receiving stolen property, and dissuading a witness.[1] He admitted to an on-bail enhancement, a prior strike conviction, and three prison priors. Consequent to these convictions and admissions, he was sentenced to 19 years and 8 months in state prison.

---

[1] Gill pleaded to all charges in the indictment, a non-negotiated disposition known as "pleading to the sheet." (Ans., Ex. 10 at 2.) The charge of receiving stolen property arose from a crime unrelated to those that gave rise to the other charges.

(Ans., Ex. 10 at 2-3 (State Appellate Opinion, *People v. Gill*, No. A137249, 2014 WL 5784502 (Cal. Ct. App. Nov. 6, 2014) (unpublished)).) The sentence was based on all the convictions, with the exception of the conviction for receiving stolen property, the sentence for which the court stayed.

Gill appealed and received some relief.[2] The state appellate court stayed the sentence imposed for the convictions for burglary and dissuading a witness. However, it denied relief on his ineffective assistance claim. Gill's revised sentence was 17 years. This federal habeas petition followed.

The Court notes that there is little doubt that Gill committed the charged crimes, as the following passage from the state appellate court's opinion makes clear:

> According to the evidence from the preliminary hearing, on May 4, 2010, Gill and Jonathan Bottorff entered the home of Laura Zeltser using a garage door opener stolen from Zeltzer [*sic*]'s car. Zeltser arrived home with her six-year-old son to find her garage door was open. When she heard footsteps upstairs she called 911 and shouted that she was home. Bottorff and Gill came downstairs carrying some of Zeltser's jewelry. Zeltser told Gill to drop the jewelry and tried to put him in a headlock, saying she would 'let it go' if he dropped her valuables. Gill struck Zeltser on the head a couple of times and fled to a Ford Explorer parked in front of the house. Zeltser pursued him, and grabbed a duffel bag from the passenger side of the Explorer in order to have something to identify the perpetrators, and took down the license plate number. Police apprehended Gill and Bottorff shortly thereafter.

(Ans., Ex. 10 at 2.) Gill concedes that "innocence was not an issue." (Trav. at 4.)

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[2] His direct appeal and his petition for writ of habeas corpus were consolidated and disposed of in one decision from the state appellate court. (Ans., Ex. 10 at 3.)

2

§ 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

Gill claims his counsel, John Stringer, rendered ineffective assistance by failing to advise him to take a plea bargain that would have resulted in a sentence of 9 or 13 years. The facts, as summarized by the state appellate court, are worth reciting at length:

> The following is from the evidence in support of Gill's petition. On October 14, 2011, the prosecutor offered [Gill] a nine-year prison sentence in exchange for guilty pleas. Defense counsel John Stringer advised Gill not to take the offer and counter offered a six-year suspended sentence with the condition that Gill complete a drug treatment program. The prosecutor

3

rejected the counteroffer.

In April and again in June, 2012, Stringer approached the prosecutor with an offer of a nine-year suspended sentence and a residential drug program. Both times the prosecutor rejected the offer. During a pretrial conference on June 20 the prosecutor revoked the nine-year offer, made a new offer of 13 years, and said defendant was 'never getting a drug program.' Stringer communicated this offer to Gill, but did not advise him as to whether to take it because Gill was being led out of the courtroom. Although the prosecutor did not say so, Stringer believed this was a 'drop dead' offer, i.e., that it would be withdrawn if not accepted that day. But Stringer apparently never communicated that belief to Gill. Instead, sometime between June 20 and June 29 he discussed the offer with Gill and advised him not to take it. Stringer believed the prosecutor would want to avoid trial, that he would prevail on a pending motion to suppress evidence or dismiss charges, and that the robbery count was defensible. He also thought the trial court would offer Gill a 'fair and appropriate' deal if none was reached with the prosecutor.

Trial was scheduled for July 9. On June 29, Stringer approached the prosecutor about presenting a new plea offer. The prosecutor responded that he was authorized to negotiate with defense counsel and that Stringer 'may also wish to contact Senior Deputy District [Attorney] Doug MacMaster once the case is called in master calendar on the 9th.' Stringer then made a third counteroffer of a 13–year suspended sentence with a residential drug treatment program, coupled with an offer to help law enforcement close a handful of other cases and waive time credits.

Various delays followed. On July 11, MacMaster replied that '[r]ight now the People are disinclined to put the 13 years back on the table' and were hoping to try the case, but that it was 'possible we'll revisit the issue of a negotiated disposition as we approach the last day . . . ' On July 15 Stringer reiterated his offer. MacMaster responded that his office was 'disinclined to accept your offer right now, but anything could happen. Let's see where we are tomorrow, and where we are as we approach the last day.' Stringer thereafter continued to pursue his 13–year suspended sentence proposal until the case was assigned to a trial court on July 27. On that date Gill told Stringer he wanted to accept the 13–year prison offer, but it had been withdrawn.

(Ans., Ex. 10 at 10-12.)

In July 2012, Gill formally entered his plea. At the sentencing hearing in October, he asked to withdraw his guilty plea, "primarily on the ground that acute anxiety and

emotional distress had prevented him from understanding the ramifications of an open plea and that he had not understood what he was pleading to." (*Id.* at 3.) The court denied his request and imposed sentence.

On appeal, Gill contended that counsel was ineffective:

> Gill asserts his counsel's representation fell below constitutional standards because he failed to properly advise him to accept the 13–year prison sentence. Specifically, he contends his attorney 'failed to bargain reasonably' by negotiating for probation and a drug program in lieu of prison after the prosecutor told him no such disposition would be offered; when he misled Gill into thinking he could get a drug program; when he failed to properly advise Gill the 13–year offer could be withdrawn if he waited until trial; when he gave Gill an overly optimistic assessment of his motion to dismiss charges or suppress evidence and of the overall strength of his case; and when he relied on his erroneous belief that the trial court could offer Gill a plea if no deal was reached with the district attorney. Gill asserts he was prejudiced because he 'would have accepted the deal before it was too late' had he known it might be withdrawn.

(Ans., Ex. 10 at 12.)

The state appellate court rejected the claim:

> Gill has shown no reasonable probability he would have accepted the proferred plea. Although his declaration generally recounts that Stringer advised him to wait for a better offer and expressed confidence about his prospects at trial, his actual claim of prejudice is that he would have accepted 13–years in prison 'before it was too late' had he known the offer could be withdrawn. Gill says Stringer advised him the offer would remain available 'until the trial actually started,' but no evidence corroborates this assertion; nor is there corroboration for Gill's claim that he would have accepted the offer had he known there was a risk it would not remain open. And while Stringer says he mistakenly believed the trial court would offer a 'fair and appropriate' deal if negotiations with the prosecutor fell through, there is no evidence that he communicated this belief to Gill or that it in any way influenced Gill's refusal to accept the 13–year offer while it was on the table. Moreover, it is not established in this record that the offer of a 13–year prison sentence was withdrawn with finality, or that its acceptance was rejected by the district attorney as untimely when the case was called for trial on July 27. As late as July 15, Gill's lawyer was seeking a suspended sentence. The district attorney rejected Gill's request in an e-mail saying, 'We're disinclined to accept your offer right now, but anything can happen. Let's see where we are tomorrow, and where we are as we

5

>approach the last day.' Although Gill's counsel declares that Gill wanted to accept 13 years in prison when the case was called for trial on July 27, there is nothing in this record that suggests an attempted acceptance was presented to the district attorney and rejected as untimely because the offer had expired. The record reflects that Gill's objective in plea negotiations was to avoid serving a prison sentence, and there is no independent corroboration of his claim that he would have accepted an offer of 13 years in state prison if he had known the offer could expire . . . Gill's showing is insufficient as a matter of law to establish prejudice.

(*Id.* at 13-14.)

At the plea hearing, Gill admitted without reservation that he was pleading guilty to all charges and that by doing so he faced a possible maximum sentence of 27 years and 4 months. (*Id.* at 2.) In the end, Gill was sentenced to 19 years and eight months in state prison. (*Id.* at 3.)

After a defendant has entered a plea of guilty, the only challenges left open on federal habeas corpus review concern the voluntary and intelligent character of the plea[3] and the adequacy of the advice of counsel.[4] Where, as here, a petitioner is challenging his guilty plea, he must show (1) his "'counsel's representation fell below an objective standard of reasonableness,'" and (2) "'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56-57). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (citing *Strickland v. Washington*, 466 U.S. 668, 693 (1994)).

AEDPA "erects a formidable barrier to federal habeas relief." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). The barrier is even more formidable when seeking relief on an

---

[3] Gill does not claim in his present petition that his plea was not knowing and voluntary.

[4] There are exceptions to this general bar. For example, a defendant who pleads guilty still may raise in habeas corpus proceedings the very power of the state to bring him into court to answer the charge brought against him, *see Haring v. Prosise*, 462 U.S. 306, 320 (1983) (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)), and may raise a double jeopardy claim, *see id.* (citing *Menna v. New York*, 423 U.S. 61 (1975)).

6

ineffective assistance claim.[5] The standards created by *Strickland* and § 2254(d) are "highly deferential." *Strickland*, 466 U.S. at 689. When the two apply in tandem, review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Gill's position is that but for counsel's errors, he would have received a better plea bargain. This, however, is not the legal showing required to succeed on a claim of ineffective assistance under the circumstances of this case. Even if one assumes that his counsel's aggressive negotiating fell below an objective standard of reasonableness, Gill must show that but for counsel's errors, he *would have insisted on going to trial*, not that a better plea bargain could have been had. *Moore*, 562 U.S. at 131-132. Habeas relief is not warranted here.

A trial for Gill would have been disastrous and he knew it; as he admitted, this was a case in which "innocence was not an issue." If he had been convicted on all charges, he would have faced a sentence of 27 years and 4 months, a much heavier sentence than the 19-year one he received, which was reduced to 17 years on appeal.

Gill cites as support that his co-defendant Bottorff received, through a negotiated disposition, a sentence of four years. (Trav. at 4.) Bottorff's experience is not comparable. The two had different criminal histories, as noted by Bottorff's counsel, whose declaration is appended to Gill's petition. (Pet., Ex. 4.)

Gill's criminal history was considerable, including a prior strike conviction and three prison priors. These prior convictions heavily enhanced his final sentence:

> The court sentenced Gill to a prison term of 19 years and 8 months, composed of the six-year upper term on the robbery count, a consecutive one-year, four month term on the burglary count, and a concurrent three-year term on the dissuading a witness count. The court imposed the two-year midterm for receiving stolen property but stayed it under section 654, doubled the seven-year, four-month total under sections 667, subdivision (a) and 1170.12, and added five years for the section 667, subdivision (a) enhancement.

---

[5] "Even under de novo review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011).

7

(Ans., Ex. 10 at 3.)  Before the enhancements were imposed, Gill's sentence was 7 years and 4 months, a term within a few years of the 4 years Bottorff received.  However, the difference in their criminal histories was crucial.  Gill's term was <u>doubled</u> and 5 additional years were added directly because of his prior convictions.  Given that, Gill's lengthy sentence becomes less surprising and Bottorff's relatively lighter sentence becomes less relevant.  When one considers Gill's criminal history and the likelihood of conviction on all charges, it is reasonable to infer that after a trial he likely would have received a sentence very close to the one he did receive, if not a longer one.

Given the doubly deferential standard of review, Gill has not shown that but for counsel's errors he would have not pleaded guilty and insisted on going to trial.  Under the law, that is dispositive.  Accordingly, the state court's prejudice determination was reasonable and is owed AEDPA deference.  The petition is DENIED.

## CONCLUSION

The state court's adjudication of Gill's claim did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Gill may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** June 5, 2017

_____
WILLIAM H. ORRICK
United States District Judge